UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

AVRAHAM DADON, an individual

    Plaintiff,

v.

GB INSTRUMENTS INC., a Florida Corporation,
d/b/a GBI DATA & SORTING SYSTEMS, a/k/a
GBI INTRALOGISTICS SOLUTIONS,

    Defendant.
_____/

## **COMPLAINT**

1. Plaintiff, AVRAHAM DADON (hereinafter referred to as "Plaintiff" and "DADON"), is an individual residing in Broward County, Florida.

2. Defendant, GB INSTRUMENTS INC., is a Florida Corporation d/b/a GBI DATA & SORTING SYSTEMS, a/k/a GBI INTRALOGISTICS SOLUTIONS (hereinafter referred to as "GBI"), with corporate offices located at 1143 W. Newport Center Drive, Deerfield Beach, Florida 33442, within the jurisdiction of this Court, whose primary business at all times material to this Complaint has been manufacturing, selling, and installing sorting machinery in Florida and other States and countries outside the United States.

3. Plaintiff brings this action for unpaid overtime compensation, liquidated damages, and the costs and reasonable attorneys' fees of this action under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §216(b), and for alleged violations and damages under the Florida Whistleblower Act, F.S. §448.102 *et seq.*

4. Jurisdiction is conferred on this Court by 28 U.S.C. §216(b), 29 U.S.C. §1337, and

1

28 U.S.C. §1367(a).

5. All of the events, or a substantial part of the events, giving rise to this action, occurred within the jurisdiction of the United States District Court for the Southern District of Florida.

6. At all times material to this Complaint, including but not necessarily limited to during the years 2013, 2014, 2015, and 2016, GBI has had two (2) or more employees who have regularly sold, handled, or otherwise worked on goods and/or materials that had been moved in or produced for commerce. In this regard, Plaintiff alleges based upon information and belief and subject to discovery, that at all times material to this Complaint, GBI has employed two (2) or more employees who, *inter alia*: (a) regularly handled, worked on, and sold commercial machines including but not limited sorting machines, jewelry sorting machines, and watch sorting machines which were goods and/or materials moved in or produced for commerce; (b) regularly handled and worked with tools and materials such as cutters, grinders, drills, wrenches, hand tools, milling machine, table saws, aluminum, wood, steel and screws that were goods and/or materials moved in or produced for commerce; (c) regularly drove vehicles to and from the commercial customer locations of GBI at which Plaintiff and other employees carried out the installation of sorting machinery and related services for Defendant, which vehicles were moved in or produced for commerce and which operated on gasoline that was moved in or produced for commerce.; and (d) transacted business across States lines including but not limited to in Orlando, Florida, Queens, New York, Cleveland, Ohio, and Moscow, Russia.

7. Based upon information and belief, the annual gross sales volume of GBI has been in excess of $500,000.00 per annum at all times material to this Complaint, including but not necessarily limited to during the years 2013, 2014, 2015, and 2016.

8. At all times material to this Complaint, including but not necessarily limited to during the years 2013, 2014, 2015, and 2016, GBI has been an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. §203(s).

9. In or around June 2014, GBI hired Plaintiff for the position entitled Production Superintendent with a start date planned for August 2014.

10. Throughout Plaintiff's employment with GBI between approximately August 2014 and April 2015, Plaintiff's primary duties for GBI were non-exempt in nature, consisting of: (a) putting together machinery in GBI's warehouse in Deerfield Beach, Florida; (b) installing sorting machines and equipment at customer sites including outside the United States (for example, in Russia); and (c) maintenance, repairs, and electrical work throughout GBI's warehouse and offices.

11. In numerous work weeks during his employment with GBI in approximately August 2014, September 2014, October 2014, and December 2014, Plaintiff regularly worked in excess of Forty (40) hours per week for Defendant.

12. More specifically, during numerous work weeks throughout approximately August 2014, September 2014, October 2014, and December 2014, Plaintiff regularly worked five (5) days per week for GBI with start times of approximately 6:30 a.m. and with stop times ranging between approximately 6:30 to 9:00 p.m.— along with regularly working up to two (2) Saturdays a month for an average of approximately ten (10) hours per day, between approximately 9:00 a.m. and 7:00 p.m.—regularly averaging Sixty (60) hours per week for two (2) weeks out of the month and Seventy (70) hours per week for the other two (2) weeks of the month.

13. However, between August 2014 and April 2015, GBI compensated Plaintiff based upon the regular rate of $26.44/hour without paying time and one-half wages for Plaintiff's hours

worked in excess of Forty (40) hours per week.

14. GBI failed to maintain records of the all of the actual start times, stop times, number of hours worked each day, and total hours actually worked each week by Plaintiff during each week of his employment with Defendant between August 2014 and April 2015 as required by the FLSA, 29 C.F.R. §516.2(a)(7).

15. GBI had knowledge of the hours worked in excess of Forty (40) hours per week by Plaintiff in approximately August 2014, September 2014, October 2014, and December 2014, but Defendant nonetheless willfully failed to compensate Plaintiff for the overtime hours he worked for GBI, instead accepting the benefits of the work performed by Plaintiff without the overtime compensation required by the FLSA.

16. Based upon Plaintiff being owed an average of Twenty (20) unpaid overtime hours per week at the time and one-half rate of $39.66/hour during a total of Ten (10) work weeks between August 2014 and December 2014 and Plaintiff being owed an average of Thirty (30) unpaid overtime hours per week at $39.66/hour during a total of Ten (10) weeks between August 2014 and December 2014, Plaintiff's unpaid overtime wages total $19,830.00 [($39.66/hour x 20 Unpaid OT hours/week x 10 weeks = $7,932.00) + ($39.66/hour x 30 Unpaid OT hours/week x 10 weeks = $11,898.00) = $19,830.00].

17. The complete records reflecting the compensation GBI actually paid to Plaintiff each week between August 2014 and April 2015 are in the possession, custody, and/or control of Defendant.

18. As part of his carrying out his assigned duties for GBI, Defendant directed and required Plaintiff to travel to GBI's customers' places of business to install GBI machinery. In this regard, in late October 2014, Defendant sent Plaintiff to Moscow, Russia on a tourist visa for

4

the express purpose of conducting business for GBI in Russia. More specifically, GBI required Plaintiff to install a $3,000,000.00 mail sorting machine for Toshiba CIS LLC, one of GBI's clients, in Russia.

19. Upon completion of the machine installation for Toshiba in Russia, GBI required Plaintiff to remain in Russia to perform other tasks on behalf of GBI, all while Plaintiff was solely on a tourist visa, including Defendant requiring Plaintiff to overstay the time allowed in Russia under that visa.

20. As a result of staying in Russia approximately six (6) days longer than the allowable time under the tourist visa pursuant to which GBI sent Plaintiff to Russia, Plaintiff was advised at the airport that because his tourist visa had expired, Russian immigration authorities were going to detain him for not complying with immigration law.

21. Ultimately, after being in Russia for a total of approximately Thirty-One (31) days, Plaintiff was able to secure his release from Russia and returned to the United States.

22. On or about December 12, 2014, approximately two (2) weeks after Plaintiff returned to work in Florida, Plaintiff and his immediate supervisor, Tim Dimoca, and GBI's Chief Operating Officer, Israel Schecter, had a meeting for the purported purpose of evaluating Plaintiff's work during which meeting Plaintiff objected to and refused to continue participating in GBI's unlawful practice of requiring employees to travel outside of the United States on tourist visas in order to conduct business for GBI in foreign countries without authorization by law to do so. Plaintiff also told GBI's management that Defendant's knowing and unlawful use of tourist visas to conduct business for GBI in foreign countries—including in Russia where Plaintiff was not free return home to the U.S.—had jeopardized Plaintiff's freedom and physical safety and could not continue as a result of Plaintiff's reasonable, well-founded fears for his own well-being

and safety.

23. In retaliation for Plaintiff's objection to and refusal to participate in GBI's unlawful work travel practices and illegal immigration activities, Defendant subjected Plaintiff to disparate treatment beginning in or around December 12, 2014 and required that Plaintiff work on weekend installation assignments without compensation, culminating in the termination of Plaintiff's employment on or around April 15, 2015 on the asserted bases by GBI that (a) Plaintiff was late to work and absent too much; and (b) Plaintiff was smoking cigarettes.

24. At all times material to this action, Plaintiff satisfactorily performed his essential job duties for GBI.

25. The reasons proffered by GBI for Plaintiff's termination in April 2015 were false and known to be false by GBI at the time of Plaintiff's termination.

26. All conditions precedent to the institution of this action have either occurred or been waived.

## COUNT I
## OVERTIME VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

27. Plaintiff, AVRAHAM DADON, readopts and realleges the allegations contained in Paragraphs 1 through 26 above.

28. Plaintiff is entitled to be paid time and one-half of his applicable regular rate of pay for each hour he worked for GBI in excess of Forty (40) hours per work week between August 2014 and April 2015.

29. GBI knowingly and willfully failed to pay Plaintiff at time and one-half of his applicable regular rates of pay for all of his actual hours worked for Defendant in excess of Forty (40) per week between August 2014 and April 2015.

30. At all times material to this Complaint, GBI had notice that Defendant's

compensation practices did not provide Plaintiff with time and one-half wages for all of his actual overtime hours worked between August 2014 and April 2015 based upon, *inter alia*: (a) Defendant failing to maintain accurate time records of the actual start times, actual stop times, and actual total hours worked each week by Plaintiff; and (b) Defendant failing to pay time and one-half wages for all of the actual hours worked in excess of Forty (40) hours per week by Plaintiff.

31.     By reason of the said intentional, willful and unlawful acts of GBI, Plaintiff has suffered damages plus incurring costs and reasonable attorneys' fees.

32.     GBI did not have a good faith basis for its failure to pay time and one-half wages for all of the actual hours worked by Plaintiff, as a result of which Plaintiff is entitled to the recovery of liquidated damages from Defendant pursuant to 29 U.S.C. §216(b).

33.     Plaintiff has retained the undersigned counsel to represent him in this action, and pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to recover from GBI all reasonable attorneys' fees and costs incurred as a result of Defendant's violations of the FLSA.

34.     Plaintiff demands a jury trial under Count I of the Complaint pursuant to the FLSA.

WHEREFORE, Plaintiff, AVRAHAM DADON, demands judgment against Defendant, GB INSTRUMENTS INC., GBI DATA & SORTING SYSTEMS, a/k/a GBI INTRALOGISTICS SOLUTIONS, for the payment of all unpaid overtime compensation, liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including prejudgment interest.

**COUNT II - VIOLATION OF FLORIDA'S WHISTLEBLOWER ACT, F.S. §448.102**

35.     Plaintiff, AVRAHAM DADON, readopts and realleges the allegations contained in Paragraphs 1 through 26 above.

36.     At all times material to this Complaint, Plaintiff an employee of GBI within the meaning of F.S. §448.101(2).

37. At all times material to this Complaint, GBI has been engaged in an industry affecting commerce and has had Ten (10) or more employees for each working day in each of Twenty (20) or more weeks in the current or preceding calendar year.

38. At all times material to this Complaint, GBI was an employer within the meaning of F.S. §448.101(3), Florida's Whistleblower Act.

39. Under Florida's Whistleblower Act, F.S. §448.102, an employer **may not** take any **retaliatory personnel action** against an employee because the employee has:

> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> **(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.**

40. In late October 2014, Defendant sent Plaintiff to Moscow, Russia on a tourist visa for the express purpose of conducting business, namely to install a multi-million dollar mail sorting machine for Toshiba CIS LLC, one of GBI's clients, in Russia.

41. Upon completion of the machine installation for Toshiba in Russia, GBI required Plaintiff to remain in Russia to perform other tasks on behalf of GBI, all while Plaintiff was solely on a tourist visa, including Defendant requiring Plaintiff to overstay the time allowed in Russia under that visa.

42. As a result of staying in Russia approximately six (6) days longer than the allowable time under the tourist visa pursuant to which GBI sent Plaintiff to Russia, Plaintiff was advised at the airport that because his tourist visa had expired, Russian immigration authorities were going to detain him for not complying with immigration law, as a result of which Plaintiff was in Russia for a total of approximately Thirty-One (31) days before Plaintiff was able to secure his release from Russia and returned to the United States.

43. In December 2014, shortly after Plaintiff returned to work in Florida, Plaintiff and his immediate supervisor, Tim Dimoca, and GBI's Chief Operating Officer, Israel Schecter, had a meeting for the purported purpose of evaluating Plaintiff's work during which meeting Plaintiff objected to and refused to continue participating in GBI's unlawful practice of requiring employees to travel outside of the United States on tourist visas in order to conduct business for GBI in foreign countries without authorization by law to do so.  Plaintiff also told GBI's management that Defendant's knowing and unlawful use of tourist visas to conduct business for GBI in foreign countries—including in Russia where Plaintiff was not free return home to the U.S.—had jeopardized Plaintiff's freedom and physical safety and could not continue as a result of Plaintiff's reasonable, well-founded fears for his own well-being and safety.

44. When GBI began subjecting Plaintiff to disparate treatment in mid- December 2014 and continuing through Defendant's decision to terminate Plaintiff's employment on or around April 15, 2015, a motivating factor behind Defendant's employment decisions was Plaintiff's objection to Defendant's policy and/or practice of sending Plaintiff to work in a foreign country on a tourist visa without lawful authorization to conduct work and requiring Plaintiff to overstay that visa without permission, which policy and/or practice Plaintiff reasonably and in good faith

believed was in violation of a law, rule, or regulation applicable to GBI and pertaining to Defendant's business, GBI violated F.S. §448.102(3).

45.     GBI's disparate treatment of Plaintiff and the termination of Plaintiff's employment constitute "retaliatory personnel actions" within the meaning of F.S. §448.102.

46.     GBI subjected Plaintiff to retaliatory personnel actions between December 2014 and April 2015, in violation of F.S. §448.102(3).

47.     The fact that Plaintiff engaged in activity protected by Florida's Whistleblower Act was a motivating factor in GBI's termination of Plaintiff's employment, in violation of F.S. §448.102(3).

48.     GBI's violations of F.S. §448.102(3) were willful, egregious and in direct violation of the statutory protections expressly set forth in Florida's Whistleblower Act.

49.     Plaintiff has suffered and continues to suffer lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of GBI's violations of F.S. §448.102(3).

50.     Pursuant to F.S. §448.104, Plaintiff is entitled to recover his reasonable attorneys' fees and costs from GBI under Count II of this Complaint.

WHEREFORE, Plaintiff, AVRAHAM DADON, demands judgment against GB INSTRUMENTS INC., d/b/a GBI DATA & SORTING SYSTEMS, a/k/a GBI INTRALOGISTICS SOLUTIONS, for back pay, employment benefits and other compensation including bonuses, compensatory damages, punitive damages, emotional distress, equitable relief, including, but not limited to, reinstatement or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.


Dated:  April 21, 2016                          Respectfully submitted,

                              By:    **s/KEITH M. STERN**
                                     Keith M. Stern, Esquire
                                     Florida Bar No. 321000
                                     E-mail:  employlaw@keithstern.com
                                     Hazel Solis Rojas, Esquire
                                     Florida Bar No. 91663
                                     E-mail:  hsolis@workingforyou.com
                                     LAW OFFICE OF KEITH M. STERN, P.A.
                                     8333 NW 53rd Street, Suite 450
                                     Doral, Florida  33166
                                     Telephone:  (561) 299-3703
                                     Facsimile:  (561) 288-9031
                                     Attorneys for Plaintiff

## CONSENT TO JOIN FORM

1. I consent to be a party plaintiff in a lawsuit against Defendant(s), <u>GB Instruments Inc., d/b/a GBI Data & Sorting Systems, a/k/a GBI Intralogistics Solutions,</u> as well as any related entities and individuals, to seek recovery for violations of the Fair Labor Standards Act (FLSA) pursuant to 29 U.S.C. §216(b) *et seq.*

2. I hereby designate the Law Office of Keith M. Stern, P.A. to represent me in bringing my FLSA claims and to make decisions on my behalf concerning the litigation and settlement of these claims. I agree to be bound by any adjudication by the Court, whether it is favorable or unfavorable.

3. I also consent to join any other related action against Defendant(s), or any other potentially responsible parties, to assert my FLSA claims and for this Consent Form to be filed in any such action.

<u>Avraham Dadon</u>
Printed Name

**Signature:** _____
Avraham dadon (Apr 21, 2016)

**Email:** fuseus37@gmail.com